UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
OCALA DIVISION

GARY MISHOE,

                Plaintiff,

v.                                          Case No. 5:08-cv-371-Oc-GRJ

MICHAEL J. ASTRUE, Commissioner of Social
Security,

                Defendant.
_____/

## ORDER

Plaintiff appeals from a final decision of the Commissioner of Social Security ("the Commissioner") denying his applications for a period of disability and disability insurance benefits. (Doc. 1.) The Commissioner has answered (Doc. 4), and both parties have filed briefs outlining their respective positions. (Docs. 9 & 10.) For the reasons discussed below, the Commissioner's decision is due to be **REVERSED** and **REMANDED** under sentence four of 42 U.S.C. §405(g).

## I. PROCEDURAL HISTORY

On August 2, 2005, Plaintiff filed an application for a period of disability, and disability insurance benefits alleging a disability onset date of August 25, 2005. (R. 66-68.) Plaintiff's application was denied initially and upon reconsideration. (R. 22-25, 35-36, 39-40.) Thereafter, Plaintiff timely pursued his administrative remedies available before the Commissioner and requested a hearing before an Administrative Law Judge ("ALJ"). (R. 34.) The ALJ conducted Plaintiff's administrative hearing on August 23, 2007. (R. 189-206.) The ALJ issued a decision unfavorable to Plaintiff on November 16,

2007. (R. 11-21.) Plaintiff's request for review of the hearing decision by the Social Security Administration's Office of Hearings and Appeals was denied. (R. 3-8.) Plaintiff then appealed to this Court. (Doc. 1.)

## II. **STANDARD OF REVIEW**

The Commissioner's findings of fact are conclusive if supported by substantial evidence.[1] Substantial evidence is more than a scintilla in that the evidence must do more than merely "create a suspicion of the existence of [a] fact," and must include "such relevant evidence as a reasonable person would accept as adequate to support the conclusion."[2]

Where the Commissioner's decision is supported by substantial evidence, the district court will affirm, even if the reviewer would have reached a contrary result as finder of fact, and even if the reviewer finds that the evidence preponderates against the Commissioner's decision.[3] The district court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision.[4] However, the district court will reverse the Commissioner's decision on plenary review if the decision applies incorrect law, or if the decision fails to provide the district court with sufficient

---

[1] *See* 42 U.S.C. § 405(g).

[2] Foote v. Chater, 67 F.3d 1553, 1560 (11th Cir. 1995) (citing Richardson v. Perales, 402 U.S. 389, 401(1971); Walden v. Schweiker, 672 F.2d 835, 838 (11th Cir. 1982)); *accord* Edwards v. Sullivan, 937 F.2d 580, 584 n.3 (11th Cir. 1991).

[3] Edwards, 937 F.2d at 584 n.3; Barnes v. Sullivan, 932 F.2d 1356, 1358 (11th Cir. 1991).

[4] Foote, 67 F.3d at 1560; *accord* Lowery v. Sullivan, 979 F.2d 835, 837 (11th Cir. 1992) (holding court must scrutinize entire record to determine reasonableness of factual findings); Parker v. Bowen, 793 F.2d 1177 (11th Cir. 1986) (finding court must also consider evidence detracting from evidence on which Commissioner relied).

reasoning to determine that the Commissioner properly applied the law.[5] The law defines disability as the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment that can be expected to result in death, or has lasted or can be expected to last for a continuous period of not less than twelve months.[6] The impairment must be severe, making Plaintiff unable to do his previous work, or any other substantial gainful activity which exists in the national economy.[7]

The ALJ must follow five steps in evaluating a claim of disability.[8] First, if a claimant is working at a substantial gainful activity, he is not disabled.[9] Second, if a claimant does not have any impairment or combination of impairments which significantly limit his physical or mental ability to do basic work activities, then he does not have a severe impairment and is not disabled.[10] Third, if a claimant's impairments meet or equal an impairment listed in Title 20, Part 404, Subpart P, Appendix 1 of the Code of Federal Regulations, he is disabled.[11] Fourth, if a claimant's impairments do not

---

[5] Keeton v. Dep't Health & Human Servs., 21 F.3d 1064, 1066 (11th Cir. 1994).

[6] 42 U.S.C. §§ 416(i), 423(d)(1); 20 C.F.R. § 404.1505.

[7] 42 U.S.C. § 423(d)(2); 20 C.F.R. §§ 404.1505-.1511.

[8] 20 C.F.R. §§ 404.1520, 416.920. The claimant has the burden of proving the existence of a disability as defined by the Social Security Act. See Carnes v. Sullivan, 936 F.2d 1215, 1218 (11th Cir. 1991).

[9] 20 C.F.R. § 404.1520(b).

[10] Id. § 404.1520(c).

[11] Id. § 404.1520(d).

prevent him from doing past relevant work, he is not disabled.[12] Fifth, if a claimant's impairments (considering his residual functional capacity ("RFC"), age, education, and past work) prevent him from doing other work that exists in the national economy, then he is disabled.[13]

The burden of proof regarding the plaintiff's inability to perform past relevant work initially lies with the plaintiff.[14] The burden then temporarily shifts to the Commissioner to demonstrate that "other work" which the claimant can perform currently exists in the national economy.[15] The Commissioner may satisfy this burden by pointing to the grids for a conclusive determination that a claimant is disabled or not disabled.[16]

However, the ALJ should not exclusively rely on the grids when the claimant has a non-exertional impairment which significantly limits his or her basic work skills or when the claimant cannot perform a full range of employment at the appropriate level of exertion.[17] In a situation where both exertional and non-exertional impairments are

---

[12] 20 C.F.R. § 404.1520(e).

[13] Id. § 404.1520(f).

[14] Walker v. Bowen, 826 F.2d 996, 1002 (11th Cir. 1987); *see also* Doughty v. Apfel, 245 F.3d 1274, 1278 (11th Cir. 2001).

[15] Doughty, 245 F.3d at 1278 n.2.
> In practice, the burden temporarily shifts at step five to the Commissioner. The Commissioner must produce evidence that there is other work available in significant numbers in the national economy that the claimant has the capacity to perform. In order to be considered disabled, the claimant must then prove that he is unable to perform the jobs that the Commissioner lists. The temporary shifting of the burden to the Commissioner was initiated by the courts, and is not specifically provided for in the statutes or regulations.

Id. (internal citations omitted).

[16] Walker, 826 F.2d at 1002. Once the burden shifts to the Commissioner to show that the claimant can perform other work, the grids may come into play. Id.

[17] Phillips v. Barnhart, 357 F. 3d 1232, 1243 (11th Cir. 2004); Jones v. Apfel, 190 F.3d 1224, 1229 (11th Cir. 1999); Wolfe v. Chater, 86 F.3d 1072, 1077 (11th Cir. 1996); Walker, 826 F.2d at 1003 ("The
(continued...)

found, the ALJ is obligated to make specific findings as to whether they preclude a wide range of employment.[18]

The ALJ may use the grids as a framework to evaluate vocational factors so long as the ALJ introduces independent evidence of the existence of jobs in the national economy that the claimant can perform.[19] Such independent evidence may be introduced by a vocational expert's testimony, but this is not the exclusive means of introducing such evidence.[20] Only after the Commissioner meets this burden does the burden shift back to the claimant to show that he or she is not capable of performing the "other work" as set forth by the Commissioner.[21]

### III. **SUMMARY OF THE RECORD EVIDENCE**

Plaintiff was sixty four (64) years old at the time of the ALJ's decision on November 16, 2007. (R. 11-21, 66, 193.) He has a college education, and has previous work experience as a water utilities manager. (R. 71-72, 194-95.) Plaintiff contends that he has been unable to work since August 25, 2005 due to bipolar disorder, depression, anxiety, hypertension, gout, right shoulder pain, diabetes mellitus type II, and diabetic neuropathy. (R. 23, 25, 116, 197, 201, 203.) Plaintiff is insured for benefits through July 2009. (R. 50.)

---

[17](...continued)
grids may be used only when each variable on the appropriate grid accurately describes the claimant's situation.").

[18] Walker v. Bowen, 826 F.2d 996, 1003 (11th Cir. 1987).

[19] Wolfe v. Chater, 86 F.3d 1072, 1077-78 (11th Cir. 1996).

[20] See id.

[21] See Doughty v. Apfel, 245 F.3d 1274, 1278 n.2 (11th Cir. 2001).

In the ALJ's review of the record, including Plaintiff's testimony, written correspondence and medical records from three of Plaintiff's health care providers, the ALJ determined that Plaintiff suffers from the following medically determinable impairments: major depression, hypertension, and non-insulin dependent diabetes mellitus. (R. 16.) The ALJ found that Plaintiff did not have an impairment or combination of impairments that significantly limit (or can be expected to significantly limit) his ability to perform basic work-related activities for 12 consecutive months. Accordingly, the ALJ concluded that Plaintiff did not have a severe impairment or combination of impairments at step two of the sequential analysis.

As for the ALJ's consideration of Plaintiff's mental impairments, the ALJ found that, based on all of the evidence, Plaintiff did not suffer from a severe mental impairment because he has only mild restriction of activities of daily living; mild limitations in his social functioning; mild difficulties in maintaining concentration, persistence, and pace; and no episodes of decompensation. (R. 20.)

***Medical Evidence***

The medical evidence of record is very limited and contains medical records from only three medical providers spanning a time period beginning in February 2004 through the date Plaintiff alleged onset of his disability, August 25, 2005.

In February 2004, Plaintiff initiated treatment with Dr. Augusto De Leon because he had recently moved from Ocala to Flagler Beach, Florida. Plaintiff advised that, pursuant to his previous doctors' treatment of his bipolar disorder, he was currently taking six different medications which included three anti-depressants and an anti-

6

anxiety medication. Dr. De Leon noted that Plaintiff had a history of bipolar disorder and was status post electro convulsive therapy and referred Plaintiff to a mental health care provider. (R. 131-32.)

Pursuant to Plaintiff's complaints of right shoulder pain, Dr. De Leon also referred Plaintiff to an orthopedist, Dr. Ronald Bathaw of Palm Harbor Orthopedics for assessment of Plaintiff's symptoms. Dr. Bathaw's examination was normal and x-rays of Plaintiff's shoulder revealed no abnormalities. Dr. Bathaw diagnosed Plaintiff with impingement syndrome, prescribed anti-inflammatories and recommended restriction of Plaintiff's activities (although his treatment note did not specify the extent of recommended restriction). Dr. Bathaw also noted that Plaintiff had a history of bipolar disorder. (R. 123-24.)

Plaintiff returned to Dr. De Leon in March 2004 for an annual examination. Plaintiff advised that his prescribed medication had significantly helped his shoulder pain. Dr. De Leon informed Plaintiff that his blood testing revealed abnormal liver functioning. As a result, Dr. De Leon recommended that Plaintiff discontinue taking some of his medications – including one of his anti-depressants as well as his anti-anxiety medication. However, Plaintiff refused to stop taking the medications stating that going off of the medications would make him "go bonkers." Dr. De Leon noted that Plaintiff had scheduled an appointment with the mental health department for April 29, 2004. (R. 126-28, 130.)

Between September 2004[22] and August 2005, Plaintiff saw Dr. Fariya Afridi fourteen times for treatment of his mental health complaints. During his visits, Plaintiff consistently reported feeling very anxious and depressed. (R. 139, 141, 147, 151, 153, 154.) He also complained that he felt "weird" and had difficulty focusing and concentrating (R. 141), he was "restless [and] unable to sit still" (R. 148), he lacked energy and motivation (R. 153), and that he was "very stressed out." (R. 137.) Nearly all of Dr. Afridi's mental status examinations were abnormal and revealed that Plaintiff presented with a depressed mood, and anxious or constricted affect. (R. 137, 139, 141, 145, 147, 148, 150, 151, 153, 154.) Dr. Afridi diagnosed Plaintiff with anxiety and major depressive disorder, recurrent, moderate. (R. 139.) Over the course of Dr. Afridi's treatment of Plaintiff, she tried various combinations and dosages of several different anti-depressants and anti-anxiety medication.

In October 2005, Dr. Alejandro Vergara, a non-examining state agency physician, reviewed Plaintiff's file including medical records from Dr. Afridi as well as Plaintiff's application materials. Dr. Vergara acknowledged Plaintiff's allegations that he had received electroconvulsive therapy but he noted that there were no medical examination reports available to document this. He noted that "[t]here are no medical examination reports available in the file indicating a history of mental health treatment or psych[iatric] hosp[italization]." He further notes that although Plaintiff received mental health treatment on a fairly regular basis, it was for major depression and not bipolar

---

[22] Although Dr. De Leon's treatment notes reflect that Plaintiff appeared for an initial evaluation with his mental health care provider in April 2004 (R. 126-28, 130), the treatment note for this visit does not appear in the record.

disorder as alleged by Plaintiff. He opined that Plaintiff experienced mild restriction of activities of daily living; mild difficulties in maintaining social functioning; mild difficulties in maintaining concentration, persistence and pace; and that there was *insufficient evidence* to determine whether Plaintiff had experienced any episodes of decompensation. (R. 160.) Dr. Vergara concluded that Plaintiff's current mental condition was not severe. (R. 157-62.)

A second non-examining state agency physician reviewed Plaintiff's file in January 2006 and also concluded that Plaintiff's depression and anxiety were "not currently severe." (R. 163-76.)

On January 19, 2006, another non-examining state agency physician reviewed Plaintiff's file to assess Plaintiff's physical residual functional capacity. Noting that the most recent medical record on file was Dr. De Leon's medical examination report of March 2004, the state agency physician opined that there was no physical evidence of significant limitations attributable to Plaintiff's hypertension, gout, and right shoulder pain. As a result, he found Plaintiff capable of lifting and/or carrying fifty pounds occasionally and twenty-five pounds frequently; standing and/or walking for about six hours in an eight hour workday; sitting (with normal breaks) for about six hours in an eight hour workday; and pushing / pulling without limitation. He further found Plaintiff to have no postural, manipulative, or environmental limitations. (R. 177-84.)

***Plaintiff's Correspondence With the ALJ***

On May 22, 2007, the Plaintiff wrote a letter to the ALJ informing him that he was no longer represented by counsel and that he intended to represent himself going

forward. He enclosed completed questionnaires concerning his current medications, recent medical treatment, and work background. He also attached redacted copies of three different letters he had written to his former attorney which documented all of the medical treatment he had received between January 18, 2006 and August 31, 2006 including: the names of his current medical providers, addresses and phone numbers for each medical provider, specific dates of treatment, the conditions each medical provider treated, and changes that were made to his prescriptions during each visit. (R. 106-15.)

A month later, Plaintiff wrote another letter to the ALJ providing additional detailed and specific information concerning medical treatment he had received between September 7, 2006 through June 22, 2007.[23] (R. 116-18.)

According to Plaintiff's written correspondence with the ALJ prior to the hearing, Plaintiff was treated for hypertension, bipolar disorder, type 2 diabetes, and diabetic peripheral neuropathy at Citra Family Health on January 18, 2006,[24] March 29, 2006, April 5, 2006, April 19, 2006, April 28, 2006, May 3, 2006, June 2, 2006, June 16, 2006, June 23, 2006, July 5, 2006, July 14, 2006, July 26, 2006, August 16, 2006, September 27, 2006, and April 13, 2007 for a total of fifteen office visits. Plaintiff also saw Dr. Jesse Te for treatment of hypertension, bipolar disorder, diabetes, and diabetes peripheral neuropathy on August 31, 2006, September 28, 2006, November 30, 2006, and January

---

[23] Plaintiff also enclosed a self-generated chart detailing, with great specificity, the results of his blood tests which he claims took place on April 7, 2006, September 19, 2006, November 14, 2006, and April 13, 2007. (R. 119.)

[24] Notably, this treatment note was generated one day prior to the date the non-examining state agency physician prepared physical residual functional capacity assessment.

5, 2007. Plaintiff sought treatment for his bipolar disorder at Lifestream Behavioral Center on February 6, 2006 and with psychologist, Steven Curry, M.A., on September 16, 2006, September 27, 2006, October 5, 2006, and October 11, 2006. None of these medical records appear in the administrative record.

Four days after Plaintiff's hearing before the ALJ, he wrote another letter to the ALJ in an apparent attempt to "supplement" his testimony.[25] In his letter, Plaintiff stated that "[t]he delayed start, and compressed time of the hearing caused [him] to be confounded somewhat." (R. 120.) He went on to reiterate his concern that the Social Security Administration had never scheduled him for consultative examinations with a physician nor with a psychiatrist at any point during his appeal process. (R. 120, 206.) He also addressed a point he says he "failed to make" during the hearing which was that he has been struggling with mental illness in varying degrees for his entire life. According to Plaintiff, due to a change in his medication necessitated by abnormal liver functioning, his mental health precipitously declined at the beginning of 2004 to a point where he could not longer deal with the normal stresses associated with his job by August 2005 when he ultimately quit his job. Plaintiff went on to provide a detailed summary of his mental health care treatment since 1962.

According to Plaintiff's letter, he had been hospitalized for psychiatric reasons on at least four occasions; he was Baker Acted following two suicide attempts; he underwent electroconvulsive shock therapy; and he has sought mental health treatment on a regular basis for approximately the past thirty years. (R. 120-22.)

---

[25] Plaintiff wrote, "I trust that you will consider this letter as a part of my sworn testimony." (R. 120.)

11

*Plaintiff's Testimony*

During the hearing on August 23, 2007, Plaintiff advised that his former attorney had withdrawn as his legal representative. Nonetheless, he testified that he understood that he was entitled to have a representative at the hearing with him but he wanted to proceed without legal representation. (R. 191-92.)

Plaintiff testified that he was previously employed as the Director of Public Utilities for the City of Bunnell, Florida (R. 194) but he had to quit in August 2005 because he "was really having some difficulty" with depression. (R. 203.) According to Plaintiff, he was very depressed and was taking several medications at high doses during that time. He concluded that "perhaps if [he] didn't have all the stress, there's a possibility [he] could lower the medication dosages, and somehow live." (R. 197, 203-04.) He testified that now that he no longer works, and because he avoids stress, he is feeling better and no longer has suicidal thoughts. (R. 205-06.) He expressed his belief that stress is what "activates" his mental problems and so he does what he can to avoid stress and stressful situations. (R. 196, 205-06.) He advised the ALJ that he had recently seen his treating physician at Citra Family Health just a few weeks prior to the hearing. (R. 199.) He also expressed his concern that he had never been examined by a Social Security Administration doctor or psychiatrist. (R. 206.)

## IV. **DISCUSSION**

Plaintiff raises only one issue in his appeal. The Plaintiff argues that the ALJ committed reversible error by failing to fully and fairly develop the record. Specifically, Plaintiff argues that the ALJ did not fulfill his obligation to develop the record because

12

the ALJ's determination at step two of the sequential analysis that Plaintiff did not suffer from a "severe" impairment or combination of impairments, was based, at least in part, on the absence of medical records in the administrative record to support Plaintiff's allegations.

According to Plaintiff, when he appeared at his hearing before the ALJ without the assistance of counsel, the ALJ's duty to develop the record rose to a "special duty" and, accordingly, the ALJ had a duty to "scrupulously and conscientiously probe into, inquire of, and explore for all relevant facts."[26] Plaintiff points out that both prior to and during the hearing he informed the ALJ that since his alleged onset of disability in August 2005, he had received additional medical treatment for various medical conditions including: hypertension, bipolar disorder, depression, diabetes mellitus, and diabetic peripheral neuropathy.[27] Plaintiff argues that as part of his heightened duty to explore for all relevant facts the ALJ should have obtained the medical records associated with that medical treatment.

In response, the Commissioner argues that the ALJ's duty did not rise to the level of a special duty because, although Plaintiff appeared at his hearing without the assistance of a legal representative, he had effectively waived his right to counsel.

---

[26] Brown v. Shalala, 44 F.3d 931, 934 (11th Cir. 1995) (quoting Smith v. Schweiker, 677 F.2d 826, 829 (11th Cir. 1982)).

[27] Diabetic peripheral neuropathy is a type of nerve damage and is a chronic and progressive complication associated with diabetes mellitus. STEDMAN'S MEDICAL DICTIONARY 1313 (28th ed. 2006). It is characterized by one or more of the following symptoms: impaired sensitivity and/or pain in the toes, feet, legs, hands, arms, and fingers; wasting of the muscles of the feet or hands; muscle weakness; loss of balance and coordination; impaired reflexes. NATIONAL DIABETES INFORMATION CLEARINGHOUSE (NDIC), *Diabetic Neuropathies: The Nerve Damage of Diabetes*, NIH Pub. No. 08-3185 (February 2009).

13

When a claimant appears at a hearing unrepresented by counsel and the claimant has not effectively waived his right to counsel, the ALJ is charged with a special duty. In particular, the ALJ must be "especially diligent" in ensuring that all relevant facts and circumstances are elicited from the claimant during the hearing.[28] However, such an enhanced duty does not arise where a claimant has effectively waived his right to representation.[29]

Because a social security claimant's right to counsel is a statutory—as opposed to constitutional—right, it can be waived.[30] For it to be effective, waiver must be knowing and intelligent.[31] Although Plaintiff concedes that the ALJ clearly informed Plaintiff of his right to counsel during the hearing and that Plaintiff understood this right, Plaintiff argues that the ALJ failed to fully apprise him of his right to counsel because he did not inform him of the availability of affordable legal representation.

However, in addition to Plaintiff's discussion of his right to counsel with the ALJ at the hearing, he was further notified of his right to representation on more than one occasion *prior to the hearing* via written correspondence from the Commissioner. (R. 34, 36, 40, 43.) In this correspondence, the Commissioner repeatedly advised Plaintiff that he had a right to counsel, that such representation could be obtained free of charge, and that the Commissioner can withhold up to 25 percent of any past due

---

[28] Cowart v. Schweiker, 662 F.2d 731, 735 (11th Cir. 1981) (quoting Cox v. Califano, 587 F.2d 988, 991 (9th Cir. 1978)).

[29] Id.

[30] Brown v. Shalala, 44 F.3d 931, 934 (11th Cir. 1995) (citing 42 U.S.C. § 406; Smith v. Schweiker, 677 F. 2d 826, 828 (11th Cir. 1982)).

[31] Smith, 677 F.2d 826 at 828.

14

benefits to pay toward attorney's fees incurred during the appeal process. (R. 34, 36, 40, 43.)

Moreover, in addition to the content of the Commissioner's notices, Plaintiff also affirmatively expressed his desire to proceed without legal representation. He advised the Commissioner both in written correspondence directed to the ALJ before the hearing, and then again orally during his hearing, that his previous counsel had withdrawn as his legal representative in this matter and he wished to represent himself. (R. 111, 191.) The ALJ offered Plaintiff additional time to find an attorney and noted that the delay would not impact his claim, but Plaintiff expressed his desire to proceed. (R. 191-92.)

In view of these facts, there is no question that the Plaintiff effectively waived his right to representation. Accordingly, the ALJ did not have a "special" duty to develop the record as would be the case in the absence of such a waiver.

Even though Plaintiff's waiver of his right to counsel did not trigger the special duty to develop the record, the ALJ, nonetheless, still had a basic obligation to fully and fairly develop the record[32] because a hearing is intended to be "inquisitorial rather than adversarial" in nature.[33] The duty is triggered, for example, when there is an ambiguity in the record or when the record is inadequate to allow for proper evaluation of the

---

[32] Kelley v. Heckler, 761 F.2d 1538, 1540 (11th Cir. 1985); Cowart v. Schweiker, 662 F.2d 731, 735 (11th Cir. 1981)

[33] Sims v. Apfel, 530 U.S. 103 (2000).

15

evidence.[34] "There is no bright line test for determining when the administrative law judge has . . . failed to fully develop the record."[35] The determination depends upon the facts and circumstances of a particular case. Although the ALJ's duty to develop the record does not extend so far as to require the ALJ to review every medical record Plaintiff alleges to be in existence, the ALJ is obligated to ensure his decision is based upon an "adequate" record.

In response to Plaintiff's contention that the ALJ improperly based his disability determination upon an inadequate record, the Commissioner notes that the burden is on the Plaintiff—and not the Commissioner—to provide evidence of a disability. While this is correct as a general matter, a claimant's failure to fully sustain his burden of proof does not relieve the Commissioner of his responsibility to conduct a reasonable inquiry into all the matters at issue.[36] Further, even if an ALJ's development of the record is deficient, to be entitled to remand Plaintiff must demonstrate that he was prejudiced by the ALJ's conduct.[37]

Plaintiff's correspondence with the ALJ prior to the hearing brought to the attention of the ALJ Plaintiff's impairments of bipolar disorder, diabetes, and/or diabetic peripheral neuropathy. According to Plaintiff, the ALJ's failure to obtain the medical

---

[34] See 20 C.F.R. §§ 404.1512(e), 404.1519a.

[35] Lashley v. Sec'y of Health & Hum. Servs., 708 F.2d 1048, 1052 (6th Cir. 1983).

[36] See, e.g., Sierka v. Comm'r of Social Sec., No. 6:08-cv-1073-Orl-28GJK, 2009 WL 2160523, at *11 (M.D. Fla. July 17, 2009) (citing Figueroa v. Sec'y of Health, Educ. & Welfare, 585 F.2d 551, 554 n.2 (1st Cir. 1978)).

[37] Graham v. Apfel, 129 F.3d 1420, 1422-23 (11th Cir. 1997); Kelley v. Heckler, 761 F.2d 1538, 1540 n.2 (11th Cir. 1985).

records pertaining to those medical conditions was prejudicial because it resulted in the ALJ's determination at step two of the sequential analysis that Plaintiff did not have an impairment or combination of impairments that impacted his ability to perform basic work activities. Indeed, despite Plaintiff's allegations of bipolar disorder, diabetes mellitus, and diabetic peripheral neuropathy, the ALJ did not ask Plaintiff any questions about those conditions during the hearing. Further, although the ALJ acknowledged in his written decision that Plaintiff alleged having diabetes and diabetic peripheral neuropathy - he gave those conditions only cursory consideration because "there [were] no medical records in the file to support [Plaintiff's] allegations." (R. 18, 20.) The ALJ also gave minimal consideration to Plaintiff's allegations of bipolar disorder apparently in reliance upon a comment by a non-examining state agency psychiatrist that "claimant has received regular treatment for major depression, not bipolar disorder." (R. 19.)

In order to show prejudice Plaintiff need not demonstrate that the ALJ would have reached a different outcome.[38] It is sufficient if a claimant shows that there is evidence pertinent to his claims that the ALJ did not consider.[39] "The likelihood of unfair prejudice may arise if there is an evidentiary gap that 'the claimant contends supports [his] allegations of disability.'"[40]

---

[38] Kelley v. Heckler, 761 F.2d 1538, 1540 (11th Cir. 1985).

[39] Brown v. Shalala, 44 F.3d 931, 936 n.9 (11th Cir. 1995) (finding claimant was prejudiced where there was a significant evidentiary gap and the ALJ knew there were medical records relevant to Plaintiff's allegations for that period of time but he made his disability determination without them).

[40] Couch v. Astrue, 267 Fed. Appx. 853, 855 (11th Cir. 2008) (quoting Brown, 44 F.3d at 936 n.9).

In this case, Plaintiff has identified a significant evidentiary gap in the record. The most recent medical record contained in the administrative record relied upon by the ALJ is dated August 25, 2005—the date of alleged onset of disability. (R. 137.) However, Plaintiff has been receiving medical treatment for his various medical conditions on a regular basis since that time. Plaintiff brought to the attention of the ALJ prior to the hearing that there are medical records from Citra Family Health Center and Dr. Jesse Te that document treatment he received for hypertension, bipolar disorder, diabetes, and diabetic peripheral neuropathy over the course of 19 office visits between January 18, 2006 and January 5, 2007. Plaintiff also identified medical records from Lifestream Behavioral Center and psychologist, Steven Curry, M.A. that evidence mental health treatment over the course of five office visits between February 6, 2006 and October 11, 2006. The existence of these records was specifically identified in Plaintiff's written correspondence with the ALJ months before the hearing and notably in his written decision the ALJ specifically acknowledged Plaintiff's correspondence dated September 7, 2006.[41]

While the burden is always on the claimant to provide evidence of a disabling impairment, nonetheless, because an administrative hearing is a non-adversarial process, the ALJ must still make a reasonable inquiry into the facts relevant to a claim of disability. This is especially true where the ALJ's disability determination was based in part on the *absence* of medical records to support Plaintiff's alleged disabling conditions. In addition to the fact that the lack of medical evidence was a significant

---

[41] In his May 2007 letter to the ALJ, Plaintiff attached a copy of three letters Plaintiff wrote to his former attorney. One of those letters was dated September 7, 2006. (R. 107-08.)

18

reason for the ALJ's decision, the ALJ, at a minimum, should have informed the Plaintiff that the records were missing, and afforded the Plaintiff with an opportunity to supplement the record with the missing medical records.

The ALJ's failure to develop the record was clearly prejudicial because the absence of medical records was the primary reason the ALJ concluded at step two of the sequential evaluation that the medical evidence did not establish that Plaintiff had a severe impairment. The threshold for establishing a "severe impairment" at step two is low. An impairment is non-severe only if it is a slight abnormality having such a minimal effect on the individual that it would not be expected to interfere with the individual's ability to work.[42] Had the ALJ fulfilled his obligation to at least inform Plaintiff that medical records relevant to his allegations of diabetic peripheral neuropathy and bipolar disorder were missing from Plaintiff's file, the Plaintiff could have supplemented the record so that the ALJ would have had the benefit of reviewing relevant and current medical evidence of impairments highly relevant to the determination of whether these impairments impacted Plaintiff ability to perform basic work activities. Where "[a]n adjudicator is unable to determine *clearly* the effect of an impairment or combination of impairments on the individual's ability to do basic work activities, the sequential evaluation process should not end" at step two.[43]

Thus, the ALJ's failure to take steps in this case to have this missing medical information included in the record requires that this case should be remanded to the

---

[42] Davis v. Barnhart, 186 Fed. Appx. 965, 967 (11th Cir. 2006); Bridges v. Bowen, 815 F.2d 622, 625 (11th Cir. 1987).

[43] SSR 85-28.

Commissioner so that the Plaintiff will have an opportunity to present the missing records to the ALJ and the ALJ will then be able to evaluate on a fully developed record whether the Plaintiff has a severe impairment, and if so, proceed through the remaining steps of the sequential evaluation in determining whether the Plaintiff is disabled.

## V. CONCLUSION

In view of the foregoing, the decision of the Commissioner is **REVERSED** and **REMANDED** under sentence four of 42 U.S.C. § 405(g) so that the ALJ can review a fully developed record which includes all of the medical treatment Plaintiff has received for bipolar disorder and diabetic peripheral neuropathy and conduct such further proceedings as the Commissioner deems appropriate. The Clerk is directed to enter final judgment in favor of Plaintiff consistent with this Order and close the file.

**IT IS SO ORDERED.**

**DONE AND ORDERED** in Ocala, Florida, on August 14, 2009.

GARY R. JONES
United States Magistrate Judge

Copies to:
All Counsel